UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

CONTINENTAL CASUALTY COMPANY,

                       Plaintiff,                  **MEMORANDUM & ORDER**
                                                         15-CV-501 (MKB)

                         v.

CONTEST PROMOTIONS NY, LLC, CONTEST
PROMOTIONS, LLC, and NATIONAL
PROMOTIONS ASSOCIATES, LLC,

                       Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      On February 2, 2015, Plaintiff commenced the above-captioned action against Contest Promotions NY, LLC ("Contest NY"), Contest Promotions LLC ("Contest Promotions") and National Promotions Associates, LLC ("National"), alleging claims arising from Contest NY's and National's breach of an insurance contract issued by Plaintiff. (Compl. ¶¶ 25–68, Docket Entry No. 1.) On May 11, 2015, the Clerk of Court certified that Contest NY and National had failed to respond to the Complaint or appear in this action. (Docket Entry No. 11.) Plaintiff moves for entry of a default judgment against Contest NY and National (the "Defaulted Defendants") on Plaintiff's claims for breach of contract, unjust enrichment, account stated and fraudulent conveyance, and for prejudgment interest, attorneys' fees and costs. (Pl. Mot. for Default J. ("Pl. Mot."), Docket Entry No. 14.) For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion. The Court finds that Plaintiff is entitled to $62,867 in damages arising from the Defaulted Defendants' breach of contract. Plaintiff is directed to submit further documentation to allow the Court to determine the amount of prejudgment interest and costs to be awarded.

**I. Background**

Plaintiff is an insurance carrier organized under the laws of Illinois and is authorized to transact business in the State of New York.[1] (Compl. ¶ 1.) The Defaulted Defendants are limited liability companies organized under New York State law.[2] (*Id.* ¶ 2.) National is a New York limited liability company, and its principal place of business is in New York.[3] (*Id.* ¶ 6.) In January of 2011, Plaintiff issued a New York State workers' compensation insurance policy (the "Policy") to the Defaulted Defendants. (*Id.* ¶ 11.) The Defaulted Defendants would renew the Policy for two additional "effective dates of coverage," from January 11, 2012 through January 11, 2013 (the "2012–2013 Coverage Period"), and then from January 11, 2013 through January 11, 2014 (the "2013–2014 Coverage Period"). (*Id.*) For the 2013–2014 Coverage Period, the Defaulted Defendants owed $12,270 in initial premiums, but they paid Plaintiff $18,909, which entitled to them to a credit of $6529. (*Id.* ¶¶ 15–16.)

The initial premiums for the 2013–2014 Coverage Period were calculated based on estimates of the Defaulted Defendant's total payroll. (*Id.* ¶ 17.) As a result, pursuant to the Policy, the Defaulted Defendants could be subjected to audits during the coverage period in order to determine the Defaulted Defendants' actual payroll, which could result in additional

---

[1] These factual allegations are taken from the Complaint and accepted as true. In support of its motion, Plaintiff also submitted various documents relevant to Plaintiff's claims. (*See* Exs. A–C, annexed to Aff. of Connie Monroe ("Monroe Aff."), Docket Entry No. 14-4.)

[2] Defendant Contest NY has a principal place of business in Los Angeles, California. (Compl. ¶ 2.)

[3] The Complaint alleges that the same five individuals control the Defaulted Defendants and Defendant Contest Promotions LLC: (1) Rick Del Mastro, a citizen of the State of New York; (2) Jamie Rogers, a citizen of the State of New Jersey; (3) Gary Shafner, a citizen of the State of California; (4) Peter Zackery, a citizen of the State of California; and (5) Michael Montgomery, a citizen of the State of California. (*Id.* ¶¶ 2–7.)

premiums being owed to Plaintiff. (*Id.*) After an audit of the Policy for the 2013–2014 Coverage Period, the Defaulted Defendants "jointly and severally" owed additional premiums of $69,396. (*Id.* ¶ 18.) The Defaulted Defendants have not paid this amount. (*Id.* ¶¶ 19–24.)

## II. Discussion

### a. Standard of review

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). However, the Second Circuit has an "oft-stated preference for resolving disputes on the merits," *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993), and therefore "[a] plaintiff is not entitled to default judgment as a matter of right, merely because a party has failed to appear or respond," *LG Funding, LLC v. Florida Tilt, Inc.*, No. 15-CV-631, 2015 WL 4390453, at *2 (E.D.N.Y. July 15, 2015) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)). "[T]he court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). "A default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013); *LG Funding, LLC*, 2015 WL 4390453, at *2 ("To determine whether the default judgment should issue, the Court examines whether 'the factual allegations, accepted as true, provide a proper basis for liability and relief.'" (quoting *Rolls-Royce PLC v. Rolls-Royce USA,*

*Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010))).

### b. Choice of law

Plaintiff is organized under Illinois law, and the Defaulted Defendants are organized under New York law. (Compl. ¶¶ 1–2, 6.) While the parties are citizens of different states, neither the Complaint nor Plaintiff's motion for a default judgment addresses what law applies to Plaintiff's claims. In moving for a default judgment, Plaintiff fails to conduct any choice-of-law analysis. Nevertheless, conducting the necessary choice-of-law analysis, the Court concludes that New York law applies.

The underlying insurance policy that Plaintiff produced to the Court does not contain a choice-of-law provision. (*See* Insurance Policy, annexed to Monroe Aff.as Ex. B.) "In the absence of an express choice of law by the parties, a federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits." *Mem'l Drive Consultants, Inc. v. ONY, Inc.*, 29 F. App'x 56, 62 (2d Cir. 2002) (first citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 108–09 (1945); and then citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Under the law of New York, the forum state, the first step in a choice of law analysis is to determine whether an actual conflict exists between the laws of the jurisdictions involved." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012) (citing *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (1993)). Where there is no conflict, "a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) (citations omitted). In contract cases presenting a conflict of law, "New York courts . . . apply a 'center of gravity' or 'grouping of contacts' approach." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997) (citations

omitted). "Under this approach, courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Id.* (citing *In re Allstate Ins. Co.*, 81 N.Y.2d at 227). "In the specific context of insurance contracts, the law to be applied is generally the law of the state which the parties understood to be the location of the insured risk." *Lapolla Indus., Inc. v. Aspen Specialty Ins. Co.*, 962 F. Supp. 2d 479, 485 (E.D.N.Y. 2013) (citing *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 319 (1994)), *aff'd*, 566 F. App'x 95 (2d Cir. 2014).

Here, while the laws of Illinois and New York do not appear to be in conflict as to the Defaulted Defendants' liability for breach of contract, they provide for different amounts of pre-judgment interest, therefore the Court resolves the choice of law question. The insurance policy at issue covers risk posed by compliance with New York workers' compensation laws. (Insurance Policy 3–4, 33–34.) Although Plaintiff is an Illinois insurance company, both insureds under the policy — Contest NY and National — are New York limited liability companies. (*Id.* at 6; Compl. ¶¶ 2, 6.) Taking these facts together, the Court finds that the "grouping of contacts" weigh in favor of New York, and will therefore apply New York law in assessing Plaintiff's claims.

    **c. Liability**

        **i. Breach of contract**

"To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)); *see*

5

*also Noise In the Attic Prods., Inc. v. London Records*, 782 N.Y.S.2d 1, 3 (App. Div. 2004) (discussing the elements of a breach of contract claim).

Here, Plaintiff has pled sufficient facts to allege the existence of a valid workers' compensation insurance policy between Plaintiff and the Defaulted Defendants and sufficient facts to support a finding that the Defaulted Defendants breached that contract by failing to remit the insurance premiums required pursuant to the policy's terms. (Compl. ¶¶ 11–13, 16, 20–24.) After Plaintiff provided the relevant insurance coverage as required under the Policy, the Defaulted Defendants paid $18,909 for the contract's initial premiums.[4] (*Id.* ¶¶ 15–16.) As stated in the policy, the amount of the premiums owed under the policy were subject to change based on audits of the policy that would determine the "actual exposure" and "final premium" due under the policy. (*Id.* ¶¶ 17–18; Insurance Policy 12 ("Information developed by audit will be used to determine final premium.").) Although the policy required additional premium payments where the final premium was more than the initial premium paid, when Plaintiff's audit revealed additional premiums owed in the amount of $69,396, the Defaulted Defendants failed to pay that balance. (Compl. ¶¶ 15–18, 20–22; Insurance Policy 12 ("If the final premium is more than the premium you paid to us, you must pay us the balance.").) Accordingly, the Court finds that Plaintiff has sufficiently pled that the Defaulted Defendants are liable for breach of contract.

    ii. **Unjust enrichment**

The Complaint asserts an unjust enrichment claim against the Defaulted Defendants. The Court finds that this claim is duplicative of Plaintiff's breach of contract claim and therefore

---

[4] The total initial premium owed was only $12,270. (Compl. ¶ 15.) Plaintiff states that the Defaulted Defendants' payment of $18,909 entitles the Defaulted Defendants to a credit $6529. (*Id.* ¶ 16.)

denies Plaintiff's motion as to this claim.

"[T]o succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that '(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'" *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (quoting *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)). However, "when a 'matter is controlled by contract,' the plaintiff has no valid claim for unjust enrichment under New York law." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014) (quoting *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561 (2005)); *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 397 (W.D.N.Y. 2010) ("An unjust enrichment claim therefore does not lie where a valid contract covers the subject matter that gives rise to the alleged enrichment."); *see also Diesel Props S.r.l.*, 631 F.3d at 54 ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." (quoting *Goldman*, 5 N.Y.3d at 572)). Indeed, "[t]he New York State Court of Appeals has recently held that '[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Gov't Empls. Ins. Co. v. Zemlyansky*, No. 13-CV-4966, 2015 WL 5692899, at *2 (E.D.N.Y. Sept. 27, 2015) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)).

Here, as discussed above, the Complaint sufficiently alleges that a valid contract existed between the parties, which the Defaulted Defendants breached, causing damage to Plaintiff. Because this dispute is governed by a valid contract, Plaintiff is not entitled to recover on an unjust enrichment theory. *See Zemlyansky*, 2015 WL 5692899, at *2; *Marshall*, 51 F. Supp. 3d at 471. As a result, the Court denies Plaintiff's motion for a default judgment as to Plaintiff's

unjust enrichment claim, as it is duplicative of the breach of contract claim. *See Ainbinder v. Money Ctr. Fin. Grp., Inc.*, No. 10-CV-5270, 2013 WL 1335997, at *8 (E.D.N.Y. Feb. 28, 2013) (declining to award default judgment on unjust enrichment claim stating, "[b]ecause the Court finds that a contract governs the disputes here, neither Ainbinder nor Mackie can demonstrate a valid claim for unjust enrichment"), *report and recommendation adopted*, No. 10-CV-5270, 2013 WL 1335893 (E.D.N.Y. Mar. 25, 2013); *Eastman Kodak Co. v. Berkshire-Westwood Graphics Grp., Inc.*, No. 09-CV-6185L, 2010 WL 2710975, at *2 (W.D.N.Y. July 6, 2010) (granting default judgment as to breach of contract claim but declining as to "alternate claims for unjust enrichment, account stated, conversion and replevin are dismissed as duplicative and/or insufficiently stated").

### iii. Account stated

The Complaint includes an account stated claim against the Defaulted Defendants. The Court finds that this claim is duplicative of Plaintiff's breach of contract claim and denies Plaintiff's motion as to this claim.

"[C]laims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (quoting *Sitar v. Sitar*, 854 N.Y.S.2d 546, 538 (App. Div. 2008)). "[I]f a plaintiff can prove an enforceable contract and the plaintiff's account stated claim seeks the same relief as its breach of contract claim, the account stated claim may be dismissed as duplicative." *OOCL (USA) Inc. v. Transco Shipping Corp.*, No. 13-CV-5418, 2015 WL 9460565, at *6 (S.D.N.Y. Dec. 23, 2015); *see also Prof'l Merch. Advance Capital, LLC v. C Care Servs., LLC*, No. 13-CV-6562, 2015 WL 4392081, at *6 (S.D.N.Y. July 15, 2015) ("[B]ecause the Court has already found that Defendants are liable for breach of contract and guarantee, and because unjust

enrichment and account stated would be duplicative of those claims, the Court . . . dismisses those claims *sua sponte*."); *Media Tenor Int'l AG v. Medco Health Sols., Inc.*, No. 13-CV-7223, 2014 WL 2933215, at *8 (S.D.N.Y. June 27, 2014) ("'If plaintiff can prove an enforceable contract, then it will be able to recover under [that] cause of action,' and the account stated claim can be dismissed." (quoting *Martin H. Bauman Assocs., Inc. v. H & M Int'l Transp., Inc.*, 567 N.Y.S.2d 404, 408 (App. Div. 1991))). Where an account stated claim entitles a plaintiff to different damages from the breach of contract claim, it is not duplicative. *See NetJets Aviation*, 537 F.3d at 175 (reversing district court's dismissal of account stated claim where it was not duplicative of breach of contract claim in light of the availability of attorneys' fees pursuant to the contract underlying the account stated claim).

Here, Plaintiff seeks the same damages pursuant to both the breach of contract and account stated claims. (Compl. ¶ 29 (seeking $62,867 in compensatory damages); *id.* ¶ 39 (seeking $62,867 in compensatory damages).) Because these claims are duplicative, the Court denies Plaintiff's motion as to the account stated claim against the Defaulted Defendants. *See Eastman Kodak Co.*, 2010 WL 2710975, at *2 (granting default judgment as to breach of contract claim but declining as to "alternate claims for unjust enrichment, account stated, conversion and replevin are dismissed as duplicative and/or insufficiently stated").

   **iv. Fraudulent conveyance**

Plaintiff asserts claims against the Defaulted Defendants for fraudulent conveyance. (Compl. ¶¶ 63–68.)

New York's Debtor and Creditor Law differentiates between fraudulent conveyance claims involving constructive fraud, N.Y. Debt. & Cred. Law §§ 273–275, and claims involving actual fraudulent intent, *id.* § 276. Under the Debtor and Creditor Law, "a conveyance by a

9

debtor is deemed constructively fraudulent if it is made without 'fair consideration,'" as required by section 272, and if (1) under section 273, "the transferor is insolvent or will be rendered insolvent by the transfer in question," (2) under section 274 "the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital," or (3) under section 275 "the transferor believes that it will incur debt beyond its ability to pay." *In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005) (internal citations omitted) (citing N.Y. Debt. and Cred. Law §§ 272–275).

Unlike these constructive fraud claims, claims under section 276 require actual fraudulent intent. Pursuant to section 276 "[e]very conveyance made and every obligation incurred with actual intent . . . to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. Debt. & Cred. Law § 276. "Case law under section 276 identifies five circumstantial indicators of 'actual intent' to defraud, termed 'badges of fraud.'" *Cadle Co. v. Newhouse*, 74 F. App'x 152, 153 (2d Cir. 2003) (citing *RTC Mortgage Trust 1995-S/N1 v. Sopher*, 171 F. Supp. 2d 192, 201 (S.D.N.Y. 2001)). "These 'badges of fraud' may include . . . 'a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; . . . and retention of control of the property by the transferor after the conveyance.'" *In re Sharp Int'l Corp.*, 403 F.3d at 56 (second alteration in original) (quoting *Wall St. Assocs. v. Brodsky*, 684 N.Y.S.2d 244, 247 (App. Div. 1999)).

Because section 273 and 275 claims "implicate constructive fraud, as opposed to fraudulent intent, the heightened pleading standard embodied in Rule 9(b), does not apply." *Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 292 (E.D.N.Y. 2012) (internal citations omitted) (citing *Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*, 375 F. Supp. 2d 257, 268

(S.D.N.Y. 2005)); *Gateway I Grp., Inc. v. Park Ave. Physicians, P.C.*, 877 N.Y.S.2d 95, 102 (App. Div. 2009) ("Contrary to the appellants' contentions, the plaintiff was not required to plead violations of Debtor and Creditor Law §§ 273, 273–a, 274, and 275, with such heightened particularity . . . ."). Conversely, claims under section 276 must be pled with the particularity required by Rule 9(b). *In re Sharp Int'l Corp.*, 403 F.3d at 56 ("As 'actual intent to hinder, delay, or defraud' constitutes fraud, it must be pled with specificity, as required by [Rule] 9(b)." (internal citations omitted)); *Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987) ("[A]llegations of violating [New York Debtor and Creditor Law] § 276 must plead the requisite mental state with particularity."). Under Rule 9(b) "a party must state with particularity the circumstances constituting fraud, which [the Second Circuit] ha[s] repeatedly held requires the plaintiff to (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197–98 (2d Cir. 2013) (citations and internal quotation marks omitted).

Here, Plaintiff is not entitled to a default judgment as to Plaintiff's fraudulent conveyance claim against the Defaulted Defendants, as it has not sufficiently pled a fraudulent conveyance claim under any section of the Debtor and Creditor Law. First, Plaintiff fails to identify any conveyance or transfer of funds involving the Defaulted Defendants, and instead merely alleges in conclusory fashion that "upon information and belief, Contest NY transferred and/or conveyed assets to National and/or Contest CA with the actual intent to hinder, delay or defraud [Plaintiff]." (Compl. ¶¶ 64–67.) Second, as to Plaintiff's constructive fraud claims, Plaintiff fails to allege any facts as to the necessary element of the inadequate consideration received for the transfer. Instead, Plaintiff merely alleges in conclusory fashion that the "value of the

consideration received by Contest NY was not reasonably equivalent to the value of the assets transferred." (*Id.* ¶ 65.) Finally, as to Plaintiff's claims involving fraudulent intent, Plaintiff's allegations fall short of the particularity standard under Rule 9(b). Plaintiff alleges only that "[u]pon information and belief, Contest NY transferred and/or conveyed assets to National and/or Contest CA with the actual intent to hinder, delay or defraud [Plaintiff]." (*Id.* ¶ 64.) This conclusory allegation includes nothing about the "circumstances constituting the fraud" underlying the alleged transaction, which is insufficient. *Tabak v. Canadian Solar Inc.*, 549 F. App'x 24, 28 (2d Cir. 2013) ("These allegations are wholly conclusory with respect to alleging fraud because they do not specify any particulars of the alleged sham transaction or why an individual transaction was a sham transaction.").

Accordingly, the Court denies Plaintiff's motion for default judgment as to its fraudulent conveyance claims against the Defaulted Defendants.

### d. Damages

Having found that Plaintiff has adequately alleged that the Defaulted Defendants are liable for breach of contract, the Court assesses the damages to which Plaintiff is entitled for that claim.

Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms. *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007) (citing *Boyce v. Soundview Tech. Group, Inc.*, 464 F.3d 376, 384 (2d Cir. 2006)). On a motion for default judgment, "[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training*

*Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (alteration in original) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). "Upon entry of a default, a plaintiff's claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed," however, "such a hearing is not mandatory." *Id.* No hearing is required "as long as it ensured that there was a basis for the damages specified in the default judgment," *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted), and this requirement may be satisfied "upon a review of detailed affidavits and documentary evidence," *Metro Found. Contractors Inc.*, 699 F.3d at 234. *See also McLean v. Wayside Outreach Dev. Inc.*, 624 F. App'x 44, 45 (2d Cir. 2015) ("Even when the [district] court determined damages with the aid of a single affidavit only partially based upon real numbers, we have not found an abuse of discretion in the district court's failure to hold an evidentiary hearing." (citations and internal quotation marks omitted)).

Here, in light of the documentary evidence submitted in support of Plaintiff's motion, the Court is able to sufficiently determine damages without an evidentiary hearing. Plaintiff seeks $69,396 in damages based on the Defaulted Defendants' breach of contract. (Aff. of Dennis Kadian ("Kadian Aff.") ¶ 7, annexed to Pl. Mot., Docket Entry No. 14-2.) This amount is supported by the "Audit Summary" submitted by Plaintiff. (Workers' Compensation Audit Summary, annexed to Monroe Aff. as Ex. C.) Although this constitutes the amount due to Plaintiff under the policy, it is not the amount required to make Plaintiff whole. Plaintiff asserts in the Complaint that the Defaulted Defendants overpaid the initial premiums by $6529, which

resulted in a "credit" to the Defaulted Defendants under their policy.[5] (Compl. ¶¶ 16, 23–24, 29.) Accounting for the credit owed to the Defaulted Defendants, the damages to Plaintiff arising from the breach of contract total $62,867, as alleged in the Complaint. (*Id.* ¶ 29.)

### e. Prejudgment interest

Plaintiff seeks prejudgment interest on the default judgment. (Monroe Aff. ¶¶ 11–12.) Pursuant to section 5001 of New York Civil Practice Law and Rules,[6] a party shall recover prejudgment interest "upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a); *see also Rhodes v. Davis*, 628 F. App'x 787, 794 (2d Cir. 2015) (Under New York Law, "[i]nterest is generally mandatory "upon a sum awarded because of a breach of performance of a contract . . . ." (citing *Id.* § 5001(a))). Section 5004 sets the rate of prejudgment interest at nine percent. N.Y. C.P.L.R. § 5004. When calculating the interest due, it "shall be computed from the earliest ascertainable date the cause of action existed." *Id.* § 5001(b). "In New York, a breach of contract cause of action accrues at the time of the breach." *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993) (citations omitted).

---

[5] Although the Complaint accounts for the credit that Plaintiff alleges was due to the Defaulted Defendants, Plaintiff's motion for a default judgment does not account for that credit in seeking the full $69,396 in additional premiums due based on Plaintiff's audit. (Kadian Aff. ¶ 7; Monroe Aff. ¶ 11.) Plaintiff includes no explanation for the inconsistency between its original allegations of damages and its current request for a default judgment. In any event, the Court accepts the allegations in the Complaint as to Plaintiff's damages and, in calculating the amount of compensatory damages, accounts for the $6529 overpayment received by Plaintiff.

[6] The Court applies New York law to the question of whether Plaintiff is entitled to prejudgment interest. "[U]nder New York choice of law principles, the allowance of prejudgment interest is controlled by the law of [the state] whose law determined liability on the main claim." *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008) (alteration in original) (quoting *Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127, 131 (2d Cir. 1984)). As discussed above, the Court applies New York law to Plaintiff's breach of contract claim against the Defaulted Defendants, and therefore the Court turns to New York law to determine whether Plaintiff is entitled to prejudgment interest.

Here, in light of the Defaulted Defendants' breach of contract, the Court finds that Plaintiff is entitled to prejudgment interest at a rate of nine percent. However, although Plaintiff adequately pleads a breach of contract claim, Plaintiff has failed to include any facts regarding the date of that breach, which is needed to properly calculate prejudgment interest. Accordingly, the Court directs Plaintiff to file information upon which the Court may properly calculate the prejudgment interest on Plaintiff's breach of contract damages award.

### f. Attorneys' fees

Plaintiff requests leave to seek attorneys' fees and costs for Plaintiff's "collection efforts, including the Complaint and Motion for Default." (Monroe Aff. ¶ 12.) "Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003). "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation*, 537 F.3d at 175 (first citing *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177–79 (2d Cir. 2005); and then citing *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491–92 (1989)).

Here, Plaintiff points to no contractual language in the policy requiring the payment of attorneys' fees. In addition, the materials submitted in support of Plaintiff's motion do not include a provision for awarding attorneys' fees. (*See* Insurance Policy.) In the absence of a clear contractual provision, the Court declines to award Plaintiff attorneys' fees for its "collection efforts, including the Complaint and Motion for Default," which are the ordinary incidents of litigation.

### g. Costs

Plaintiff also seeks costs "to be taxed by the Clerk of Court." (Monroe Aff. ¶ 11.) Although reasonable costs may be available to Plaintiff on this default judgment, aside from requesting the award of costs, Plaintiff includes no information as to its actual costs. Accordingly, Plaintiff is directed to file a bill of costs to the extent it continues to seek costs in connection with this default judgment.

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiff's motion for a default judgment. The Court grants Plaintiff's motion for a default judgment against the Defaulted Defendants — Contest NY and National — jointly and severally, based on Plaintiff's breach of contract claim. The Court denies Plaintiff's motion as to Plaintiff's unjust enrichment, account stated and fraudulent transfer claims. The Court orders Plaintiff to submit additional information and documentation to enable the Court to determine the amount of prejudgment interest and costs to be awarded. Although the Court finds that $62,867 should be awarded to Plaintiff for the Defaulted Defendants' breach of contract, no judgment shall be issued until the Court has resolved the outstanding prejudgment interest and costs issues.

SO ORDERED:

       s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: March 28, 2016
      Brooklyn, New York